**In re Petition for Naturalization of Heinz Otto Hermann ZUNKER.**

**No. 777984.**

United States District Court
S. D. New York.

May 7, 1968.

Heinz Otto Hermann Zunker, pro se.

Stanley H. Wallenstein, New York City, for the United States.

McGOHEY, District Judge.

On June 15, 1967, the petitioner Heinz Otto Hermann Zunker filed a petition for naturalization pursuant to Section 316 (a) of the Immigration and Nationality Act (the "Act"), 8 U.S.C. § 1427(a).

The question presented is whether the petitioner has established that * * * "during the five years immediately preceding the date of filing his petition [i. e. since June 15, 1962] * * * [he] has been and still is a person of good moral character" as required by Section 316(a).

The petitioner married his first wife in 1957 in Argentina. In or about December 1962 the petitioner, while already separated for more than two years but not yet divorced from his wife, commenced living with another woman in New York. The latter, now the petitioner's wife, was, at the commencement of this relationship, already separated but not divorced from her husband. On March 1, 1963, she was divorced from her first husband, and on October 15, 1963, the petitioner divorced his first wife. On October 25, 1963, the petitioner and his present wife were married and on November 13, 1963, she had a child by the petitioner.

Section 101(f) (2) of the Act, 8 U.S.C. § 1101(f) (2) provides that "[n]o person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is or was * * * one who during such period has committed adultery * * *."

The government, which supports the instant petition, urges the court to consider the extenuating circumstances surrounding what it concedes to be an adulterous relationship, and argues that viewed in this context it should not foreclose a finding of good moral character within the meaning of Section 316(a).

There is little doubt that under the case law prior to the passage in 1952 of Section 101(f) (2) the adultery present here would have been considered in the light of extenuating circumstances, and that thus considered might have been held insufficient to be a bar to a finding of good moral character.[1] It is equally clear, however, that for the reasons stated in Petition for Naturalization of O—— N——,[2] a case factually on all fours with this case, it was the intent of Congress in passing Section 101(f) (2) to preclude consideration of extenuating circumstances at least in a situation where a knowing act of adultery has been committed.

Both of the reported decisions which since O—— N—— have concluded to the contrary[3] seem not to have considered a substantial portion of the legislative history discussed at length in O—— N——. With respect, these cases are not found persuasive.

On the authority of O—— N—— the court concludes that the conceded adulterous relationship bars a finding of good moral character. Accordingly, it

becomes unnecessary to consider the possible question of "technical adultery",[4] that might be raised by the nature of the petitioner's 1963 divorce and its effect, if any, on his present marriage.

The petition for naturalization is denied without prejudice to a later petition if and when the petitioner may be able to qualify.

So Ordered.

---

1. See Petitions of Rudder et al., 159 F. 2d 695 (2d Cir. 1947); see also Schmidt v. United States, 177 F.2d 450 (2d Cir. 1949).

2. 233 F.Supp. 504 (S.D.N.Y.1964); cf. Posusta v. United States, 285 F.2d 533, 535 (2d Cir. 1961) (dictum); United States ex rel. Zacharias v. Shaughnessy, 221 F.2d 578, 579 (2d Cir. 1955) (dictum).

3. In re Edgar, 253 F.Supp. 951 (E.D.Mich. 1966); In re Briedis, 238 F.Supp. 149 (N.D.Ill.1965).

4. See Dickhoff v. Shaughnessy, 142 F. Supp. 535 (S.D.N.Y.1956).